**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

Dated: 02:59 PM July 16, 2019

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| ANTHONY JAMES GARMAN, | ) | CASE NO. 17-62055 |
| | ) | |
| Debtor. | ) | ADV. NO. 17-6024 |
| _____ | ) | |
| RENE LINCICOME, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| ANTHONY ROOFING, LLC, et al., | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| Defendants. | ) | |

    This proceeding is an action to determine the nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) and (6). The debt at issue arises from a roofing contract between Plaintiff and Defendant. The court conducted a trial on May 28, 2019.

    The court has jurisdiction of this proceeding under 28 U.S.C. § 1334(b) and the general order of reference entered by the United States District Court on April 4, 2012. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(K) and the court has authority to issue

1

final entries.  Pursuant to 11 U.S.C. § 1409, venue in this court is proper.

This memorandum constitutes the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this memorandum, the court examined the submitted materials, weighed the credibility of witnesses, considered all of the evidence, and reviewed the entire record of the case.  Based upon that review, the court finds the debt is dischargeable.

This opinion is not intended for publication or citation.  The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## **FACTS**

Anthony James Garman ("Defendant") was the sole owner and operator of Anthony Roofing, LLC.  In December 2013, Rene Lincicome ("Plaintiff") contacted Defendant about the leaking flat roof at her residence.  He provided an estimate.  The parties exchanged several emails.  In a December 30, 2013 email, Defendant represented "[w]e will also provide you with a 10 year 100% labor and material guarantee.  Water tight guarantee as well for 10 years."

On or about January 29, 2014, Plaintiff contracted Defendant to install a new Firestone roof system with a twenty year watertight guarantee at her residence for $12,995.  The invoice delineated the job as follows:

> Tear off of the entire roof system in place now.  Then install new
> wood where we find any bad or rotted wood.  After we are comfort-
> table with the wood in place, we will install a 3" build up, which will
> allow all the water the roof gets, (sic) to drain towards your gutters.
> This will prevent standing water.  Then install roof system which is
> a .045 EPDM made by Firestone.  Will flash all chimneys and install
> all new pipe boots.  We will seal all the roof openings, then clean-up
> & haul away the debris.  We will provide a 20 year water tight guarantee.

Plaintiff paid a $9,000 deposit and later paid the balance in full.

Installation followed shortly after the contract was signed.  Although Defendant did appear at the job site, he did not install the roof.  Defendant subcontracted Jeff Jarens ("Jarens") to handle the installation of the flat roof.  After the install was complete, Defendant sent a letter on February 2, 2013, stating "I now have a long term interest in your roof for the next 10 years with a 20 year, 100 percent labor and material guarantee."

At trial, Defendant testified that two warranties combine to provide the 20 year guaranty, a 10 year labor warranty provided by Defendant and a 10 year water tight guarantee provided by Firestone.  Firestone will stand by the watertight guarantee when its product is installed by a certified installer.  Defendant himself did not have the necessary certification.  Defendant did

2

not tell Plaintiff that he lacked the necessary certification, nor did Plaintiff ask. Defendant testified that he believed Jarens had the proper certification and/or education. He worked with Jarens on previous jobs.

The newly installed roof began to leak very soon after installation, damaging the interior of Plaintiff's home. Defendant does not deny the roof leaked. Plaintiff called Defendant regarding the problem at least three times. Although he did not come in person, he responded and sent someone out each time. The problems were not remediated and Plaintiff stopped calling Defendant for continued leakage. Eventually, she contacted Home Improvements Specialists, LLC, owned by Adam Casebolt. He determined the roof was "irreparable and required complete reinstallation." (Pl.'s Exh. 11, ¶ 13) He replaced the roof at a cost of $17,500.

Plaintiff sued Defendant in state court on April 26, 2017. Defendant filed a chapter 7 bankruptcy case on September 15, 2017. Plaintiff commenced this action on October 3, 2017.

## DISCUSSION

### I. 11 U.S.C. § 523(a)(2)(A)

To succeed on her nondischargeability claim under 11 U.S.C. § 523(a)(2)(A), Plaintiff must prove four elements:

> 1) The debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
> 2) The debtor intended to deceive the creditor;
> 3) The creditor justifiably relied on the false representation; and
> 4) Its reliance was the proximate cause of loss.

Brentar v. Nishnic (In re Nishnic), 2006 Bankr. LEXIS 4183 (Bankr. N.D. Ohio 2006), at 10-11, quoting In re Rembert, 141 F.3d 277, 280-81 (6th Cir. 1998) (citation omitted). She bears the burden of proof by a preponderance of the evidence. Atassi v. McLaren (In re McLaren), 990 F.2d 850, 853 (6th Cir. 1992) (citing Grogan v. Garner, 498 U.S. 279 (1991)). Plaintiff advances more than one misrepresentation in support of her § 523(a)(2)(A) claim.

### A. Defendant expressly warranted the roof would remain watertight for at least 20 years

In the contract, Defendant represented that "we will provide a 20 year water tight guarantee." There is no dispute that the roof proved not to be watertight. The fact the statement turned out to be untrue is relevant to liability, but is not sufficient, standing alone, to prove nondischargeability. To be actionable, the statement had to be false, or be made with gross recklessness, when it was made. To be grossly reckless, Defendant must "have made the representation with reckless disregard for, or conscious indifference to, the truth." In re Crowe,

2014 WL 4723084, *8 (Bankr. N.D. Ohio 2014) (citations omitted). There is no evidence that Defendant lied when he made the statement, or made it with gross recklessness. The court is persuaded that when Defendant made the statement, he fully intended that the roof would be watertight and intended to provide Plaintiff with a 20 year guarantee on his work and the materials he used in the installation.

Plaintiff elicited testimony from Defendant that more fully explains his differing representations regarding the 10 year and 20 year guarantees. After listening to the testimony, the 20 year guarantee derives from a 10 year labor guarantee provided by Defendant and 10 year product guarantee provided by Firestone. There was also testimony concerning the status of a certificate to install the Firestone roof. All this circles a cul-de-sac because Defendant never represented Plaintiff would have a guarantee from Firestone. He personally warranted the work and materials. Consequently, whether anyone had a certificate is meaningless. Plaintiff failed to establish the falsity of Defendant's statement concerning a 20 year watertight guarantee.

Even if the statement did satisfy the first element, the court finds that Defendant had no intent to deceive Plaintiff when he made the statement. There is nothing in the record that supports a finding that Defendant entered into the contract promising a 20 year watertight guarantee which he did not intend to deliver. His efforts to remediate the post-installation leakage evidence an intent to deliver a leak-free roof.

Plaintiff's § 523(a)(2)(A) action on the representation concerning the 20 year watertight guarantee fails.

### B. Garman held himself out as certified to install flat roofs and did not possess any such certifications

Plaintiff asserts that Garman represented to Plaintiff that he was certified to install flat roofs. None of the testimony supports any such representation. Plaintiff herself testified that she did not ask if Garman had certification for the roof. Garman testified that he told Plaintiff that he was licensed, bonded and insured. There is no evidence that the parties ever discussed certifications. As outlined above, to the extent that a certification underlies the Firestone warranty, Defendant never mentioned that any part of the warranty was provided by Firestone. While a certificate may be necessary to invoke protection under a Firestone warranty, this was not a specific part of the parties' contract. Plaintiff's claim on this alleged misrepresentation fails.

### C. Garman represented that all the materials used on her roof would be new

Plaintiff also contends Garman represented that all the materials used on her roof would be new. This is not supported. The parties' contract does not specify that all materials would be new. It says that new wood would be used to replace rotted or bad wood and new pipe boots installed. The statement that only rotted or bad wood would be replaced soundly renounces Plaintiff's statement that "all" materials would be new. Clearly, Defendant anticipated reuse of wood where possible.

Adam Casebolt testified that the metal seen in certain photos was older than it should have been, based on rust and other unidentified indicators. Plaintiff failed to establish that the metal referenced by Mr. Casebolt was either installed by Defendant or any of the product specified to be new in the parties' contract. There is nothing in the record demonstrating Defendant installed used product when he promised new.

Moreover, while Plaintiff intimated that the damage viewed by Mr. Casebolt was so severe that the product could not have been new, the court found such testimony to be speculative. Mr. Casebolt was on the roof approximately two years after Defendant installed it. His testimony did not conclusively establish the wear was the result of used product, nor did he establish the wear was to product that the parties' contract required to be new. Further, he did not convince the court of Defendant's responsibility for the damage. The intervening two year period between Defendant's install and Mr. Casebolt's re-installation must be considered. Weighing all testimony, the court is not persuaded Defendant represented he would use new materials and then installed used materials.

Having failed to establish a material misrepresentation, Plaintiff's claim for nondischargeability under 11 U.S.C. § 523(a)(2)(A) is not well-taken.

### II.     11 U.S.C. § 523(a)(6)

Plaintiff's complaint also contains a count for nondischargeability under 11 U.S.C. § 523(a)(6), which prevents discharge of debts "for willful and malicious injury." As the Supreme Court opined, "the word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998). To qualify as malicious, the injury must "occur[] in 'conscious disregard of one's duties or without just cause or excuse.'" Trost v. Trost (In re Trost), 735 Fed.App'x 875, 878 (6th Cir. 2018) (quoting Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986)). Thus, Plaintiff must prove that Defendant intended to injure her and cause the property damage that resulted from his installation of the leaky roof.

Neither the testimony or record evidence Defendant's intent to injure Plaintiff. As previously stated, an intent to cause injury is negated by his attempts to fix the leaks in the roof. Defendant ceased going to Plaintiff's residence only when she stopped calling him. Plaintiff failed to convince the court that Defendant intended to injure her.

### **CONCLUSION**

Defendant clearly was the wrong contractor for replacement of Plaintiff's flat roof. Even Defendant acknowledges problems with the end product. Unfortunately, bankruptcy law requires more than incompetence or poor workmanship to except a debt from discharge. To be excepted from discharge under § 523(a)(2)(A), Plaintiff had to demonstrate that Defendant obtained his payment for the roof on the basis of a false or reckless statement and she did not.

5

Additionally, the court concludes that Defendant intended to deliver on the statements he made about replacing Plaintiff's flat roof.   Plaintiff therefore cannot succeed on her claim for nondischargeability based on fraud.

In order for the debt to be nondischargeable under § 523(a)(6), Plaintiff had to show that Defendant willfully and maliciously intended the damage that resulted to her property.   The record does not support such a finding.   Defendant may have been responsible for the damage but the court cannot find that Defendant purposefully intended to cause the damage and harm Plaintiff.

An order finding the debt dischargeable and dismissing Plaintiff's complaint will be entered contemporaneously with this opinion.

#	#	#

**Service List:**

Laura L. Mills
Pierce Walker
Mills, Mills, Fiely & Lucas, LLC
101 Central Plaza S., Suite 1200
Canton, OH 44702

Edwin H. Breyfogle
108 Third Street NE
Massillon, OH 44646